Joe Edward SPEED and Edward Keith
Speed, Appellants,

v.

ELUMA INTERNATIONAL, INC. and
Commonwealth Metals
Corporation, Appellees.

No. 05–87–00018–CV.

Court of Appeals of Texas,
Dallas.

March 7, 1988.

Rehearing Denied Sept. 13, 1988.

H. Wayne Meachum, Dallas, for appellants.

Marian M. Holmes, Lawrence R. Maxwell, Jr., Robert F. Henderson, Alan D. Notinger, Dallas, for appellees.

Before WHITHAM, THOMAS and KINKEADE[1], JJ.

THOMAS, Justice.

Joe Edward Speed and Edward Keith Speed appeal from a judgment based upon findings of constructive fraud and alter ego. The Speeds raise four points of error, contending that: 1) there is no evidence or insufficient evidence to support the constructive fraud finding; 2) there is no evidence or insufficient evidence to support the alter ego finding; 3) there is no evidence or insufficient evidence to support

the actual and exemplary damages; and 4) the court erred in entering judgment based upon improperly conditioned special issues. For the reasons below, we affirm.

## I. *Factual Background*

Eluma and Commonwealth were general creditors of Josef Manufacturing, Inc. Joe Speed was sole stockholder and an officer and director of Josef. Keith Speed was also an officer and director of Josef. In October 1984, Josef, through its officers and directors, Joe and Keith Speed, attempted a bulk sale transfer of its assets to Ft. Worth Avenue Manufacturing, Inc. Eluma and Commonwealth, as intervenor, sought and obtained a temporary restraining order enjoining the bulk sale transfer.

Josef Manufacturing operated out of property owned by Joe Speed. Joe Speed testified that Josef leased the property from him and that it was in default on its rent payments. Thus, Joe Speed foreclosed his landlord lien on the assets of Josef and sold the assets at private sale to Ft. Worth Avenue Manufacturing at the price agreed upon for the aborted bulk sale.

Eluma and Commonwealth, having previously sought relief only against Josef by suing on their sworn accounts, amended their petitions after the foreclosure sale to sue the Speeds individually. The trial court granted directed verdicts on some theories alleged by Eluma and Commonwealth, and the case was submitted to the jury only on constructive fraud, alter ego, and civil conspiracy. The trial court granted the Speeds' motion for judgment n.o.v. on the civil conspiracy issue, and entered judgment against the Speeds on the bases of constructive fraud and alter ego. The judgment reflects actual damages in favor of Eluma in the amount of $91,920.26 and in favor of Commonwealth in the amount of $59,021.51. Exemplary damages were also awarded to Commonwealth in the amount of $80,000.00 and to Eluma in the amount of $80,000.00.

---

1. Justice Ed Kinkeade succeeded the Honorable John L. McCraw, Jr., Justice, upon Justice McCraw's resignation effective December 28, 1987, which was between the time the case was submitted and the time it was decided. Justice Kinkeade has reviewed the tape recording of oral argument, as well as the briefs and record before the Court.

## II. *Constructive Fraud and Alter Ego*

The Speeds contend that the evidence is legally and factually insufficient to support the jury's finding of constructive fraud. Specifically, the Speeds argue that, as a matter of law, they breached no legal duty which would give rise to constructive fraud. Further, the Speeds contend that the trial court could not disregard the corporate entity to hold the Speeds personally liable because there is no evidence or insufficient evidence to support the jury's finding of alter ego.

■ The corporate form normally insulates shareholders, officers and directors from liability for corporate obligations; however, courts will disregard the corporate fiction and hold them individually liable when the corporate form has been used as part of a basically unfair device to achieve an inequitable result. *Castleberry v. Branscum,* 721 S.W.2d 270, 271 (Tex. 1986); *Gentry v. Credit Plan Corp. of Houston,* 528 S.W.2d 571, 573 (Tex.1975); *Bell Oil & Gas Co. v. Allied Chemical Corp.,* 431 S.W.2d 336, 340 (Tex.1968). The supreme court has recognized at least seven distinct bases for disregarding the corporate fiction, including alter ego and sham to perpetrate a fraud. *See Castleberry,* 721 S.W.2d at 272 & n. 3. Although many Texas cases have blurred the distinction between alter ego and the other bases for disregarding the corporate entity, *Castleberry* recognizes that a sham to perpetrate a fraud is separate from alter ego. *Id.* at 272. Thus, if the verdict in this case can be supported under either theory submitted to the jury, the judgment must be affirmed without regard to any failure of proof under the other theory.

■ We will first examine the theory of sham to perpetrate a fraud. The court submitted to the jury a special issue asking whether the Speeds committed fraud. Fraud was defined as "any act, omission or concealment, which, irrespective of moral guilt, involves a breach of legal duty, trust or confidence and that is injurious to or misleads another person or by which an undue and unconscionable advantage is taken." We must initially determine whether this issue presented the question of sham to perpetrate a fraud. In other words, will an affirmative jury answer on a constructive fraud issue allow a judgment disregarding the corporate fiction when there is no finding on sham to perpetrate a fraud? *Castleberry* requires that we respond in the affirmative.

The supreme court has stated unequivocally, "to prove there has been a sham to perpetrate a fraud, tort claimants and contract creditors must show *only constructive fraud.*" *Castleberry,* 721 S.W.2d at 273 (emphasis only). Thus, the supreme court has erased any distinction between the commission of fraud by a corporate officer or director and the *use* of the corporation by the officer and director to commit constructive fraud. Although *Castleberry* has been criticized, *see Castleberry,* 721 S.W.2d at 277 (Gonzales, J., dissenting); Note, *Corporations—Disregarding Corporate Entity—In Suit By Contract Creditor, Corporate Entity May Be Disregarded Upon Showing of Constructive Fraud When Entity Used As Sham To Perpetrate Fraud,* 18 ST. MARY'S L.REV. 1441 (1987), we are bound to follow this pronouncement of the law by the supreme court. *Stout v. Grand Prairie Independent School District,* 733 S.W.2d 290, 292 (Tex.App.—Dallas 1987, no writ); *Diggs v. Bales,* 667 S.W.2d 916, 918 (Tex.App.—Dallas 1984, writ ref'd n.r.e.).

We now turn to the legal and factual sufficiency of the evidence to support the jury's finding of constructive fraud. Constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests. *Castleberry,* 721 S.W.2d at 273; *Archer v. Griffith,* 390 S.W.2d 735, 740 (Tex.1964).

The Speeds argue that there is no evidence that they violated any legal duty. They contend that the evidence shows merely that the Speeds disposed of Josef's assets and failed to pay general contract creditors. In doing so, argue the Speeds, they breached no legal duty. As authority,

they cite *Fagan v. LaGloria Oil & Gas Co.*, 494 S.W.2d 624 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ), for the proposition that officers and directors owe duties to the corporation but not to the corporation's creditors; and *Findley v. McAllister*, 113 U.S. 104, 5 S.Ct. 401, 28 L.Ed. 930 (1884) and *Estate of Stonecipher v. Estate of Butts*, 591 S.W.2d 806 (Tex. 1979), for the proposition that a debtor violates no legal duty or right of a general creditor if a debtor disposes of its assets.

We need not decide if the Speeds violated a *legal* duty. Constructive fraud also arises when an *equitable* duty is violated. In *Castleberry*, the supreme court upheld a finding of constructive fraud when a contract debtor manipulated corporate assets so that a contract creditor's claim could not be satisfied out of corporation assets. By taking "a flexible fact-specific approach focusing on equity," *Castleberry*, 721 S.W.2d at 273, the court upheld the finding of sham to perpetrate a fraud. Thus, we must examine the record to determine whether the Speeds violated some legal *or* equitable duty which the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interest.

In reviewing the Speeds' "no evidence" points, this Court will consider only the evidence tending to support the findings, disregarding all contrary or conflicting evidence, viewing the evidence in the light most favorable to the finding, and giving effect to all reasonable inferences that may properly be drawn from the evidence. *Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 593 (Tex.1986). The jury's findings will be set aside only if the record discloses that the evidence offered to prove a vital fact is no more than a scintilla. *Fortner v. Merrill Lynch, Pierce, Fenner & Smith*, 687 S.W.2d 8, 12 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). In reviewing factual insufficiency, this Court must consider all the evidence in the case and set aside the fact finding only if it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

Josef Manufacturing, Inc. came into existence in 1974. Joe Speed and D.E. McDonald each owned 50% of the company stock. In October 1981, Joe Speed bought out McDonald's interest, becoming the sole shareholder. Joe Speed was president, and his son, Keith Speed, was vice-president. Josef Manufacturing made a profit through 1983. After that point, profits declined. Josef failed to pay for manufacturing supplies purchased on credit from Eluma and Commonwealth.

In October 1984, Joe Speed, as president of Josef, executed a bulk sales agreement with D.E. McDonald, the former 50% stockholder in Josef. McDonald signed the agreement as president of Ft. Worth Avenue Manufacturing, Inc., which was not incorporated at the time. The agreement provided for the sale of all Josef's assets in exchange for $250,000.00. Of that amount, $150,000.00 was to be paid in the form of a two-year promissory note.

Eluma and Commonwealth, when notified of the proposed bulk sale, obtained a temporary restraining order preventing the sale. On the day the temporary restraining order was granted, Josef's attorney wrote to McDonald, informing him that Joe Speed was going to foreclose on all of the assets of the corporation pursuant to a landlord's lien and sell the assets at private sale. Pursuant to this foreclosure, the assets of Josef were transferred to Ft. Worth Avenue Manufacturing for the same consideration offered in the bulk sale.

Joe Speed, as owner of the real property from which Josef operated, testified that there was a landlord-tenant relationship between himself and Josef. He and the company entered into a lease on October 8, 1981. Although Joe Speed could not remember when a written lease, dated October 8, 1981, was signed, the parties stipulated that the lease form used had not been published until 1983. On October 20, 1984, Joe Speed as landlord executed a notice of disposition of collateral on default and a notice to assemble collateral in preparation for a sale to Ft. Worth Avenue Manufacturing. In a document dated October 22,

1984, Keith Speed, as Josef vice-president, acknowledged receipt of these documents and executed a waiver of right to redeem. On that date, however, Keith Speed also signed an American Express receipt in Hong Kong. In a document dated October 25, 1984, Joe Speed, as landlord, and Keith Speed, representing Josef, acknowledged rental arrearages in the amount of $115,-200.00 based on the October 8, 1981 lease, and cancelled the balance of the lease in consideration of the receipt of $100,000.00 and an assignment of a $40,000.00 debt owed Josef by a company in which Keith Speed was the major shareholder.

Joe Speed testified that Josef was in arrears on its rental payments from the inception of the lease. However, this debt was not listed as a corporate liability on a June 30, 1983 financial statement. Joe Speed also testified that he did not make any demands for payment of past due rent prior to the foreclosure. Although Josef had enough money to make the monthly payments, Joe Speed testified that he "didn't elect to collect for it."

█ Under these facts, there is some evidence, more than a scintilla, to support the jury's finding of constructive fraud. In considering all the evidence, the jury's finding was not so against the great weight and preponderance of the evidence as to be manifestly unjust. The jury could well believe that the foreclosure of the landlord lien was a sham to circumvent the temporary restraining order. The October 1981 lease could not have been prepared prior to 1983, Joe Speed could not recall when it was signed, and he, as landlord, had never pressed for collection of the rent. This evidence would support the conclusion that it was not a bona fide debt.

The jury, under this record, could also have concluded that Ft. Worth Avenue Manufacturing was merely a continuation of Josef Manufacturing, with the complex foreclosure-sale transaction being used to avoid creditors. McDonald, president of Ft. Worth Avenue Manufacturing, was a former shareholder of Josef, Ft. Worth purchased all Josef's assets, and Ft. Worth leased the same premises from Joe Speed

that Josef allegedly rented. In *Castleberry,* the supreme court informs us:

> To determine if there is an abuse of the corporate privilege, courts must look through the form of complex transactions to the substance. The variety of shams is infinite, but many fit this case's pattern: a closely held corporation owes unwanted obligations; it siphons off corporate revenues, sells off much of the corporate assets, or does other acts to hinder the on-going business and its ability to pay off its debts; a new business then starts up that is basically a continuation of the old business with many of the same shareholders, officers and directors.

*Castleberry,* 721 S.W.2d at 275. The evidence in this case fits this framework.

Thus, we hold that the evidence is legally and factually sufficient to support the jury's finding of constructive fraud, allowing a judgment disregarding the corporate fiction and holding the Speeds personally liable. Therefore, we need not decide whether the evidence supports disregard of the corporate fiction under the alter ego theory. Points of error one and two are overruled.

### III. *Damages*

In point of error three, the Speeds contend that the trial court erred in its assessment of actual and punitive damages. They contend that the evidence is legally and factually insufficient to support the damage award and to show that the Speeds' actions proximately caused the damage.

### A. *Actual Damages*

The jury found that $96,288.22 would fairly and reasonably compensate Eluma International. The judgment awarded Eluma actual damages of $91,920.26. The jury found that $99,889.02 would fairly and reasonably compensate Commonwealth. The judgment awarded Commonwealth actual damages of $59,021.57. Commonwealth and the Speeds stipulated that the amount owing to Commonwealth by Josef manufacturing was $59,021.57. Thus, the

evidence is sufficient to support the award of damages to Commonwealth in that amount.

■ As to Eluma, the proof established that it was awarded a judgment against Josef in 1985, but was unable to collect because Josef's assets were sold and the company ceased to operate. The judgment was for $75,606.75, plus $3,144.39 in pre-judgment interest and $3,000.00 in attorney's fees. Post-judgment interest at the rate of 10% was also awarded. From the time of judgment until three weeks before trial, post-judgment interest of $8,924.45 accrued. Thus, the total unpaid balance three weeks before trial of this case was $90,675.11. Therefore, the judgment of $91,920.26 is not so against the great weight and preponderance of the evidence as to be manifestly unjust.

### B. *Proximate Cause*

■ The Speeds argue that there is no proof supporting the jury's finding that the Speeds' actions were the proximate cause of injury to Eluma and Commonwealth. The Speeds argue that the record fails to show that Commonwealth and Eluma would have been paid "but for" the Speeds' constructive fraud. In other words, they contend that Josef would not have been able to pay its creditors even if the Speeds had not sold all the assets to Ft. Worth Avenue Manufacturing. Assuming, arguendo, that this is the correct standard for proximate cause, there is sufficient evidence that these debts could have been satisfied.

Although Joe Speed testified that Josef's assets were worth only $50,000.00 to $60,-000.00 if sold at a distress sale or bankruptcy auction, there is ample evidence that the assets were worth $250,000.00 since that is the price paid for them by Ft. Worth Avenue Manufacturing. Further, Josef tax records show that as an on-going business its profits could have been $362,025.39 as it was for the fiscal year ending March 31, 1985. Therefore, we hold that the evidence supports the jury's finding that the Speeds' actions amounting to constructive fraud were the proximate cause of damages to Eluma and Commonwealth.

### C. *Exemplary Damages*

The jury found that the Speeds' acts had been done with malice. Malice was defined as "an unlawful action done intentionally without just cause or excuse." The jury also awarded Eluma and Commonwealth exemplary damages of $80,000.00 each, with Joe Speed to pay $60,000.00 each and Keith Speed to pay $20,000.00 each. The Speeds contend that the evidence is legally and factually insufficient to support the jury's finding of malice; therefore, no exemplary damages should have been awarded.

■ A finding of malice will support an award of exemplary damages. *Fortner,* 687 S.W.2d at 13. Malice may be actual or implied; while actual malice is characterized by ill will or an intent to injure, implied or legal malice exists when wrongful conduct is intentional and without just cause or excuse. *Id.* at 12; *Accent Builders Co. v. Southwest Concrete Systems,* 679 S.W.2d 106, 111 (Tex.App.—Dallas 1984, writ ref'd n.r.e.).

■ A review of the record discloses sufficient evidence to support the jury's finding that the Speeds' wrongful acts were intentional and without just cause or excuse. The Speeds argue, however, that the evidence shows that in foreclosing on the landlord's lien they acted in good faith, sincerely pursuing a claimed legal right on advice of legal counsel. Certainly, a sincere pursuit of a claimed legal right will not support an award of exemplary damages. *Group Hospital Services, Inc. v. Daniel,* 704 S.W.2d 870, 875 (Tex.App.—Corpus Christi 1985, no writ). Under the evidence, however, the jury could have believed that the Speeds knowingly created a fictitious back rent claim in order to go forward with a sale prohibited by the temporary restraining order, and that they did so to avoid payment of their creditors.

In considering evidentiary sufficiency, this Court must remain cognizant that it is for the jury to determine the credibility of witnesses and the weight to be given their

testimony. We may not substitute our judgment for that of the jury where the challenged finding is supported by some evidence and is not against the great weight and preponderance of the evidence. *Plains Insurance Co. v. Evans,* 692 S.W. 2d 952, (Tex.App.—Fort Worth 1985, no writ). In applying this standard, we must uphold the jury's finding of malice.

As previously discussed, there is evidence indicating that the claim of back rent was not bona fide. Keith Speed testified in his deposition that although he knew the corporation had creditors, he did not take them into consideration when he agreed to the sale of assets: "Well, they just get their money when we get ours." Joe Speed's deposition testimony indicated that he considered it a natural consequence of business to leave creditors "hung out," with the debts unpaid. The purported foreclosure sale resulted in the Speeds being paid $100,000.00 cash, leaving only a $150,-000 promissory note to pay creditors. No payments were ever made by Ft. Worth Avenue Manufacturing. Having reviewed the record, we conclude that there is sufficient evidence to support the jury's finding of malice.

■ The Speeds argue further that the exemplary damage award should be reduced proportionate to the reduction of actual damages requested of this Court. We have upheld the award of actual damages; thus, no proportionate reduction is required. Further, we note that, although punitive damages must bear a reasonable proportion to actual damages, this rule is not rigid and its application is to be determined on an ad hoc basis by the facts of each case. *Nabours v. Longview Savings & Loan Association,* 700 S.W.2d 901, 904 (Tex.1985).

■ Factors to consider in determining whether an award of exemplary damages is reasonable include: 1) the nature of the wrong, 2) the character of the conduct involved, 3) the degree of culpability of the wrong-doer, 4) the situation and sensibilities of the parties concerned, and 5) the extent to which such conduct offends a public sense of justice and propriety. *Ta-*

*tum v. Preston Carter Co.,* 702 S.W.2d 186, 188 (Tex.1986); *Alamo National Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex. 1981). Considering these factors, the jury's determination that Joe Speed pay Eluma and Commonwealth $60,000.00 each and that Keith Speed pay $20,000.00 each is reasonable.

Having found sufficient evidence to support the jury's findings and the trial court's judgment on damages, we overrule point of error three.

## IV. *Conditional Submission*

In point of error four, the Speeds complain of a disjunctive conditional submission of issues. Special Issue One asked the jury whether the Speeds had committed fraud. Special Issue Three asked whether the Speeds engaged in a civil conspiracy. Special Issue Four, proximate cause, and Special Issue Six, malice, were conditioned upon an affirmative answer to Issue One *or* Issue Three. The jury answered yes to Issues One and Three; thus, it answered Issues Four and Six. The Speeds argue that there is an ambiguity in the verdict because it is impossible to determine whether the jury based its proximate cause and malice findings on fraud or conspiracy. Because the trial court granted their motion to disregard the jury's answer to the civil conspiracy issue, argue the Speeds, the verdict is fatally defective in that the proximate cause and malice findings might be based upon civil conspiracy rather than fraud.

■ The Speeds' argument is without merit. Before a party may complain on appeal of a defect in the court's charge, he must have objected to the submission at trial. TEX.R.CIV.P. 274; *Allen v. American National Insurance Co.,* 380 S.W.2d 604, 609 (1964). One must object to conditional submissions and disjunctive submissions in order to complain of these matters on appeal. *Strauss v. La Mark,* 366 S.W. 2d 555, 557 (Tex.1963); *Little Rock Furniture Manufacturing Co. v. Dunn,* 148 Tex. 197, 222 S.W.2d 985, 989–90 (1949) (failure to object to erroneous conditional

submission subjects party to deemed finding); *McMullan v. Friend,* 642 S.W.2d 15, 20 (Tex.App.—El Paso 1982, no writ) (waiver upon failure to object to disjunctive submission). Because the Speeds failed to object to the disjunctive conditional submission, they have waived any error. Point of error four is overruled.

Having overruled the Speeds' four points of error, we affirm the judgment of the trial court. Therefore, we need not address Eluma's cross-points. In any event, we lack the jurisdiction to consider these cross-points because Eluma has failed to file an appeal bond with this Court. *See Young v. Kilroy Oil Co. of Texas,* 673 S.W.2d 236, 242 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Schell v. Texas Bank & Trust Co.,* 439 S.W.2d 473, 474 (Tex.Civ.App.—Texarkana 1969, writ ref'd n.r.e.).