**SEASIDE INDUSTRIES, INC., Seaside Pools of Texas, Inc., and Bernard Leff, Appellants,**

v.

**DENZIL COOPER and Stephanie Cooper, Appellees.**

No. 05–88–00240–CV.

Court of Appeals of Texas, Dallas.

Feb. 23, 1989.

Rehearing Denied March 30, 1989.

Robert M. Nicoud, Jr., Dallas, for appellants.

Mitchell Madden, Thomas V. Murto, III, Dallas, for appellees.

Before ENOCH, C.J., and HOWELL and THOMAS, JJ.

THOMAS, Justice.

Appellees, Denzil and Stephanie Cooper, brought suit against Bernard Leff, Seaside Industries, Inc., and Seaside Pools of Texas, Inc., appellants, seeking to collect on a prior judgment entered against Seaside Pools, Inc. The Coopers alleged that Leff had used the above-mentioned corporations to defraud them so as to prevent the collection of the judgment. Based upon jury findings of alter ego, conspiracy, and sham to perpetrate constructive fraud, the trial court entered judgment against Leff. Leff raises six points of error, contending that: 1) the jury's answers do not support a judgment on any cause of action recognized under Texas law; 2) there is legally and factually insufficient evidence to support the jury's findings on conspiracy, sham to perpetrate a fraud, or alter ego; 3) there is legally and factually insufficient evidence to support the damage award; and 4) the exemplary damage award was improper and excessive. We disagree. Accordingly, we affirm.

## APPLICABILITY OF *SPEED V. ELUMA INTERNATIONAL*

This appeal is indistinguishable from *Speed v. Eluma International, Inc.,* 757 S.W.2d 794 (Tex.App.—Dallas 1988, writ pending). Recognizing this fact, Leff asks us to overrule *Speed.* We decline to do so because *Speed* properly follows *Castleberry v. Branscum,* 721 S.W.2d 270 (Tex. 1986). To overrule *Speed* would be to overrule *Castleberry.* As we noted in *Speed,* we are bound to follow the law pronounced by the supreme court. *Speed,* 757 S.W.2d at 796 (citing *Stout v. Grand Prairie Ind. School Dist.,* 733 S.W.2d 290, 292 (Tex.App. —Dallas 1987, no writ) and *Diggs v. Bales,* 667 S.W.2d 916, 918 (Tex.App.—Dallas 1984, writ ref'd n.r.e.)). Thus, we affirm our holding in *Speed.* Leff's fifth point of error, which simply states, "Special argument regarding applicability of this court's decision in *Speed v. Eluma International, Inc.*" is overruled.

## COGNIZABLE CAUSE OF ACTION

■ In his first point of error, Leff contends that the jury's findings and the trial court's judgment holding him personally liable are not supportable under any recognized cause of action. He avers that he has breached no legal duty. He cites *Estate of Stonecipher v. Estate of Butts,* 591 S.W.2d 806 (Tex.1979), for the proposition that a debtor violates no legal duty or right of a general creditor if a debtor disposes of its assets so that a judgment may not be

collected. In *Speed*, we disposed of the argument as follows:

> We need not decide if the Speeds violated a *legal* duty. Constructive fraud also arises when an *equitable* duty is violated. In *Castleberry*, the supreme court upheld a finding of constructive fraud when a contract debtor manipulated corporate assets so that a contract creditor's claim could not be satisfied out of corporate assets. By taking "a flexible fact-specific approach focusing on equity," *Castleberry*, 721 S.W.2d at 273, the court upheld the finding of sham to perpetrate a fraud.

*Speed*, 757 S.W.2d at 797. Because the supreme court has recognized the cause of action Leff contends does not exist, we overrule point of error one.

## SUFFICIENCY OF THE EVIDENCE

■ In points of error two and three, Leff contends that there is legally and factually insufficient evidence to support the jury's findings that Leff engaged in a conspiracy, operated the corporations as a sham to perpetrate a fraud, or that Leff was the alter ego of any of the corporations. Thus, Leff contends that the jury verdict provides no basis upon which to hold him personally liable on a judgment entered against a corporation in which he was an officer and shareholder.

The corporate form normally insulates shareholders, officers and directors from liability for corporate obligations; however, the supreme court has recognized at least seven distinct theories, including alter ego and sham, which justify disregarding the corporate entity and imposing personal liability upon shareholders, officers and directors. *Castleberry*, 721 S.W.2d at 271–72 & n. 3. *Castleberry* has recognized that a sham to perpetrate a fraud is separate from alter ego. Thus, if the verdict in this case can be supported under either alter ego or sham, the judgment must be affirmed without regard to any failure of proof under any other theory. *Speed*, 757 S.W.2d at 796. We find it necessary to address only the contention that the evidence of "sham to perpetrate a fraud" is lacking.

The court submitted to the jury a question asking whether Seaside Pools, Inc., Seaside Industries, Inc., Seaside Pools of Texas, Inc., or Seaside Enterprises, Inc., singly or collectively, were a sham to perpetrate a fraud upon the Coopers. The jury was instructed that the Coopers could show either actual or constructive fraud to prove that there had been a sham to perpetrate a fraud. The court instructed the jury, "Actual fraud usually involves dishonesty of purpose or intent to deceive, however constructive fraud is the breach of some legal or equitable duty which irrespective or [sic] moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interest and intent need not be shown." These instructions comport with *Castleberry* and *Archer v. Griffith*, 390 S.W.2d 735 (Tex.1964). Leff does not complain about these instructions on appeal.

In reviewing Leff's "no evidence" point, this Court will consider only the evidence tending to support the findings, disregarding all contrary or conflicting evidence, viewing the evidence in the light most favorable to the finding, and giving effect to all reasonable inferences that may properly be drawn from the evidence. *Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 593 (Tex.1986). The jury's findings will be set aside only if the record discloses that the evidence offered to prove a vital fact is no more than a scintilla. *Fortner v. Merrill Lynch, Pierce, Fenner & Smith*, 687 S.W.2d 8, 12 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). In reviewing factual insufficiency, this Court must consider all the evidence in the case and set aside the fact finding only if it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951).

In January 1983, Leff was the sole shareholder of Seaside Industries, Inc., which wholly owned Seaside Pools, Inc. On February 25, 1983, a jury returned a verdict against Seaside Pools in favor of the Coopers. Less than two weeks later, Seaside

Pools of Texas, Inc. was incorporated. Seaside Enterprises, Inc. was incorporated the same day as a "holding company" which was organized to own Seaside Industries (which still owned Seaside Pools) and the newly-created Seaside Pools of Texas. Leff was the president of all of these corporate entities. The other corporate officers of the corporations were members of Leff's family.

At some time after March 1983, Seaside Pools, the entity subject to the judgment, ceased to do business. Seaside Pools of Texas began to do business, using the same location, personnel, leasehold, telephone number, trade name and advertising. Leff admitted that he formed the new corporations to protect himself from liability for judgments and to avoid paying the judgment that Seaside Pools owed to the Coopers.

Further, financial records of the company indicated that in October 1983, Seaside Enterprises, the parent corporation of Seaside Pools, owed Seaside Pools $121,607.34 because Seaside Pools had paid expenses for Seaside Enterprises and had transferred customer notes to Seaside Enterprises. Rather than have that amount paid into the coffers of Seaside Pools, the corporation paid to Seaside Enterprises a dividend of that amount.

■ Although Leff contends that the evidence is legally and factually insufficient, he states in his brief, "Extensive evidence was presented tending to show that Seaside Pools, Inc. was solvent at the time of the prior judgment and that Bernard Leff had used other corporations and questionable accounting practices to render Seaside Pools, Inc. insolvent." Statements made by an appellant in his brief may be taken as true if not contradicted by the appellee. TEX.R.APP.P. 74(f). Thus, we may accept Leff's concession that extensive evidence established Leff's use of other corporations to render the judgment debtor insolvent. In addition, our review of the record supports this concession.

The jury, under this record, could have believed that Leff created a new corporate entity, Seaside Pools of Texas, and ceased the operation of the debtor, Seaside Pools, in order to avoid the debt owed to the Coopers. The jury could well believe that Leff effectively denuded Seaside Pools of $121,607.34 by authorizing a sham dividend in that amount to cancel out the debt owed to Seaside Pools by Seaside Enterprises.

In light of this evidence, supported by Leff's affirmation that he formed these corporations in order to avoid payment of the Cooper debt, we conclude that there is some evidence, more than a scintilla, to support the jury's finding of sham to perpetrate a fraud. In considering all the evidence, we further conclude that the jury's finding was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

Nevertheless, Leff persists in arguing that the jury verdict cannot stand because he owed no legal duty to the Coopers. Thus, he contends that there is no evidence of a sham to perpetrate a fraud. We have rejected this argument in *Speed* and in Leff's first point of error. In *Castleberry*, the supreme court informs us:

> To determine if there is an abuse of the corporate privilege, courts must look through the form of complex transactions to the substance. The variety of shams is infinite, but many fit this case's pattern: a closely held corporation owes unwanted obligations; it siphons off corporate revenues, sells off much of the corporate assets, or does other acts to hinder the on-going business and its ability to pay off its debts; a new business then starts up that is basically a continuation of the old business with many of the same shareholders, officers and directors.

*Castleberry*, 721 S.W.2d at 275. The evidence of this case fits this framework.

Thus, we hold that the evidence is legally and factually sufficient to support the jury's finding of a sham to perpetrate constructive fraud, allowing a judgment disregarding the corporate fiction and holding Leff personally liable. Therefore, we need not decide whether the evidence supports Leff's personal liability under alter ego or

conspiracy theories. Points of error two and three are overruled.

## ACTUAL DAMAGES

■ In point of error four, Leff argues that the evidence of damages was legally and factually insufficient. Leff does not dispute that the Coopers had a judgment against Seaside Pools for $31,800.00, bearing interest at the rate of 9%. Nor does he dispute that the Coopers have not been able to collect on that judgment. His argument appears to be that there is no evidence showing that Seaside Pools was able to pay the judgment. Thus, he raises the same argument presented in *Speed,* that the debtor would not have been able to pay its creditor even if the debtor had not ceased to operate and had not transferred assets. *See Speed,* 757 S.W.2d at 799. We will assume, as we did in *Speed,* that the debtor has enunciated the correct standard for proof of damages in this action. *Id.* We conclude that there is sufficient evidence that the debt could have been satisfied "but for" Leff's actions to prevent payment.

Leff testified that Seaside Pools was insolvent and had no assets or cash which could be used to satisfy the judgment. The Coopers introduced into evidence financial records of Seaside Pools and the other entities. Their expert, Peter Grossman, a certified public accountant, testified concerning the worth of Seaside Pools. He indicated that his testimony was based upon his review of the financial records acquired from Seaside Pools' accountant, John Hagan, and upon conversations with Seaside Pools' former accountant. Based upon that information, Grossman concluded that Seaside Pools had a net worth of $128,-988.60 as of December 31, 1983. He expressed his opinion that Seaside Pools was able to pay the judgment rendered in May 1983. Financial records also showed that Seaside Pools of Texas, which began operating from Seaside Pools' premises with the same personnel, telephone number and advertising, had gross revenues of $2,069,-161.00 in 1985.

Leff argues that the financial records introduced into evidence were hearsay within hearsay and, therefore, inadmissible. He contends that the remaining admissible evidence is insufficient. He argues further that the expert's testimony is insufficient, because the expert relied upon inadmissible evidence. He claims that the financial records were completely untrustworthy, because the Coopers' own expert testified that the accounting records did not comply with generally accepted accounting principles.

We note initially that in his brief Leff states, "Extensive evidence was presented tending to show that Seaside Pools, Inc. was solvent at the time of the prior judgment...." We may take this statement as true. TEX.R.APP.P. 74(f). Further, we note that Leff concedes in his brief that he did not object at trial to a franchise tax statement which showed that for the year ending December 31, 1982, Seaside Pools had gross receipts of $663,566.00 and surplus of $163,156.00. We conclude that this evidence, which Leff cannot claim is inadmissible, is some evidence, more than a scintilla, that Seaside Pools could pay the Cooper judgement when it was entered in May 1983.

■ Before addressing Leff's factual sufficiency claim, we briefly address his contentions as to the admissibility of the evidence concerning Seaside Pools' financial status. Leff argues that the financial records were not properly proven up as business records. Records of regularly conducted activity are not excluded by the hearsay rule. *See* TEX.R.CIV.EVID. 803(6). The rules of evidence set out this business record exception as follows:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or oth-

er qualified witness, ... unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

TEX.R.CIV.EVID. 803(6).

John Hagan, Leff's accountant, testified by deposition that he was the custodian of certain business records of Seaside Pools and the other Seaside entities. He prepared financial statements and income tax returns. Those records were made and kept in the regular course of his business, made at or near the time of the activity. The records were prepared by persons with personal knowledge, or from information obtained from persons with personal knowledge. When Hagan testified in person, Leff attempted to establish that Hagan did not know whether the person at Seaside who provided the information to him had personal knowledge of the matters transmitted. Hagan averred, however, that he did know that the person or persons had personal knowledge.

■ We hold that the business records were properly proven to meet the business record exception to the hearsay rule. Assuming, arguendo, that the records were inadmissible hearsay, we note that Grossman, the Coopers' expert, testified as to the financial status of Seaside Pools. Rule 703 provides that an expert's opinion need not be based upon admissible evidence. TEX.R.CIV.EVID. 703. The expert's opinion as to the net worth of the business and their ability to pay a $32,000 judgment was admissible, even if predicated upon inadmissible hearsay.

Leff argues that the evidence is insufficient because the evidence showed that the business records were inaccurate. He avers that the evidence must show that the financial records truly reflect the financial condition of Seaside Pools. He argues that this is not a situation in which the jury was entitled to resolve conflicting evidence. We disagree.

The inaccuracies Leff refers to appear to be Grossman's testimony that a number of the financial records were not drafted according to generally accepted accounting principles. Hagan's testimony indicated,

however, that the financial records were compiled from information provided by Seaside. Further, one letter from Hagan to Seaside stockholders indicates that he departed from generally accepted accounting principles at the request of Seaside management. Thus, the jury could conclude that any inaccuracies appeared at the request and direction of Seaside. Further, the jury could consider Leff's motivation for falsifying his financial position in light of his statement that he was attempting to avoid the Cooper debt. It is the jury's function to pass upon the credibility of evidence and to resolve conflicts therein. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Greenway Bank & Trust of Houston v. Smith*, 679 S.W.2d 592, 598 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

For all the reasons stated above, we conclude that the evidence is legally and factually sufficient. Point of error four is overruled.

## EXEMPLARY DAMAGES

■ In his sixth and final point of error, Leff argues that the exemplary damage award is improper and excessive. His sole argument that the award is improper is that "the evidence shows that Bernard Leff made a good faith pursuit of his legal rights with the advice of counsel and under a reasonable interpretation of the law as it existed in March, 1983." He cites *Group Hospital Services, Inc. v. Daniel*, 704 S.W.2d 870 (Tex.App.—Corpus Christi 1985, no writ). In that case, the court held that there was insufficient evidence to support an award of exemplary damages because a defendant's act in sincerely pursuing a claimed legal right did not merit a finding of willfulness, wantonness or malice. *Id.* at 875. Thus, we interpret Leff's contention as one complaining of the sufficiency of the proof supporting the jury's finding that Leff acted maliciously or with wanton or heedless disregard for the rights of the Coopers or with a conscious disregard for the Coopers' welfare.

We conclude that Leff's admission that he formulated other corporations in order

to protect himself from liability and to prevent the payment of the debt by Seaside Pools, is ample evidence to support the jury's finding that Leff acted maliciously and in wanton disregard of the Coopers' rights.

In order to prevent any confusion concerning the import of this holding, we consider it important to note what we are *not* deciding. Leff does not argue that an exemplary damage award is improper because the action is merely collection of a contract debt for which no exemplary damages can be awarded, rather than a fraud action which will allow exemplary damages.[1] Accordingly, we express no opinion concerning the propriety of such an award. We will not consider possible error not properly before us. *Central Education Agency v. Burke*, 711 S.W.2d 7, 8 (Tex. 1986).

Leff also complains that the trial court improperly cumulated the exemplary damage award. The question on exemplary damages submitted to the jury and the jury's response was as follows:

## SPECIAL ISSUE NO. 10

What sum of money, if any, do you find from a preponderance of the evidence that the Plaintiffs, Denzil and Stephanie Cooper, should be awarded against the Defendants as exemplary damages as that term has been previously defined herein? Answer separately as to each Defendant.

Answer: Answer in dollars and cents, if any.

| | |
|---|---|
| ANSWER: BERNARD LEFF | $35,000.00 |
| SEASIDE POOLS OF TEXAS, INC. | $35,000.00 |
| SEASIDE ENTERPRISES, INC. | $35,000.00 |
| SEASIDE INDUSTRIES, INC. | $35,000.00 |

In rendering judgment based upon this verdict, the court ruled as follows:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs, Denzil L. Cooper and Stephanie Cooper, have and recover the sum of ONE HUNDRED FORTY THOUSAND AND NO/100 DOLLARS ($140,000.00) as exemplary damages. Such sum is payable from the Defendants, Seaside Enterprises, Inc., Seaside Industries, Inc. and Seaside Pools of Texas, Inc., in the amount of THIRTY FIVE THOUSAND AND NO/100 DOLLARS ($35,000.00) each and from Bernard Leff in the amount of ONE HUNDRED FORTY THOUSAND AND NO/100 DOLLARS ($140,000.00) provided that such recovery of exemplary damages not exceed ONE HUNDRED FORTY THOUSAND AND NO/100 DOLLARS ($140,000.00) total.

Leff argues that it is apparent from the jury verdict that the jury intended the Coopers to recover only $35,000.00, to be paid by any of the corporate entities or Leff. We disagree. Plainly, the jury entered $35,000.00 against each defendant, as it was requested to do. Leff did not object to this charge, and failing to do so, cannot now complain about the jury's verdict following the instruction to answer separately as to each defendant. *See* TEX.R.CIV.P. 274. Thus, we conclude that the jury's verdict properly assessed exemplary damages against each defendant.

Further, we conclude that the trial court's judgment properly holds Leff personally liable for the amounts assessed against the corporate defendants. The import of the jury's finding that Leff utilized these corporations as a sham to perpetrate a fraud is that Leff is personally liable for debts incurred by those corporations. *Castleberry*, 721 S.W.2d at 271; *Speed*, 757 S.W.2d at 796. Leff's sixth point of error is overruled.

1. We also note that this argument was not raised in *Speed*. The Speeds complained only of the sufficiency of the evidence to show malice.

Having overruled Leff's six points of error, we affirm the judgment of the trial court.