Harvey ROSEN, Appellant,

v.

MATTHEWS CONSTRUCTION COMPANY, INC., Appellee.

No. A14–88–0928–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 3, 1989.

Rehearing Denied Sept. 7, 1989.

W. James Kronzer, Sidney N. Floyd, Houston, for appellant.

Herbert N. Lackshin, Houston, Bill Richey, Beaumont, B. Lee Ware, Frank W. Mitchell, Houston, for appellee.

Before JUNELL, ROBERTSON and DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

Piercing the corporate veil lies at the heart of this case. We are called on to examine the effect of such a piercing, especially where a period of years has elapsed between (a) a final original · judgment against the corporation, and (b) a later suit which seeks to disregard the corporate form and impose liability on an otherwise shielded party. We must decide how the statute of limitations operates, whether the discovery rule applies, and what the supreme court meant in footnote two of *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 575 (Tex.1975).

### I. BACKGROUND

This dispute stems from a breach of contract. Matthews Construction Company entered into an agreement with Houston Pipe & Supply Company (HP & S) in March 1979. Matthews filed suit on June 21, 1979, and secured a judgment against HP & S for approximately $300,000 on July 26, 1982. Because of difficulty in collecting that judgment, Matthews set its sights on Harvey Rosen, president and sole shareholder of HP & S. Matthews brought this action against Rosen on February 20, 1984. A jury found for Matthews, assessing $500,000 in actual damages and $60,000 in punitive damages.

The trial court rendered a judgment for Matthews which included the bulk of the actual damage award, but without punitive damages. Both parties now appeal. Matthews seeks reinstatement of the deleted punitive damages. Rosen urges us to render a take nothing judgment against Matthews, arguing that the 1984 action to pierce the corporate veil should fail for three reasons:

(1) the statute of limitations,
(2) res judicata, and
(3) election of remedies.

The limitations claim rests on the lapse of time between the breach of contract (1979) and the piercing suit (1984). The res judicata argument reasons that Matthews could have joined Rosen as a defendant in 1979, and that a second suit on the same basic issues ought to be barred. The election of remedies approach is essentially a variation on the res judicata theme, maintaining in essence that one bite at the apple suffices. We agree with Rosen's plea of limitations. Accordingly, we affirm that part of the judgment which ordered that Matthews take nothing in punitive damages, and we modify the remainder of the judgment to provide that Matthews take nothing in actual damages.

### II. PIERCING THE CORPORATE VEIL

Because resolution of this case requires a weighing of competing policies, we begin with an examination of elementary corporations law. We then discuss Texas caselaw on piercing the corporate veil and limitations.

### A.

The standard starting point for discussion of the corporate entity takes the form of a question: is a corporation a fiction or a fact? *See* 1 Fletcher, Cyclopedia Corporations § 24 (1983). Without dwelling unduly on the jurisprudential aspects of the question, we note that a corporation qualifies as a person for some purposes but not for others. *E.g. Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d

346 (1976) (corporation has a first amendment right to free speech); *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950) (corporation has no right to privacy); *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906) (corporation is a person for purposes of fourth amendment ban on unreasonable search and seizure, but not respecting fifth amendment privilege against self-incrimination). Most commentators are agreed that to call the business entity a fiction is a perfectly permissible way to summarize its various legal characteristics, but we should be wary of letting the metaphor become the master:

> The whole problem of the relation between parent and subsidiary corporations is one that is still enveloped in the mists of metaphor. Metaphors in law are to be narrowly watched, for starting as devices to liberate thought, they end often by enslaving it ...

*Berkey v. Third Ave. Ry. Co.*, 244 N.Y. 84, 155 N.E. 58, 61 (1926) (Cardozo, J.).

We should likewise be wary of branding a corporation a "fiction" as a rhetorical device intended to denigrate its legal status, and thereby to excuse the application of second-class justice. *See Klein v. Board of Tax Supervisors*, 282 U.S. 19, 24, 51 S.Ct. 15, 16, 75 L.Ed. 140 (1930) ("But it leads nowhere to call a corporation a fiction. If it is a fiction it is a fiction created by law with intent that it should be acted on as if true.") (Holmes, J.). There is little to be gained from focusing on what is or is not a legal person; Professor Hamilton has cogently described the pointlessness in mistaking an epithet for analysis:

> This argument is at best a make-weight and at worst conclusion-oriented: a court has decided that result *A* should be reached, and since the "legal person" argument leads to result *A*, this argument appears in the opinion. Of course, why result *A* is better than result *B* is seldom articulated.

R. HAMILTON, BUSINESS ORGANIZATIONS § 232 at 220 (Texas Practice 1973); *see also id.* § 234 at 224–25 ("Fortunately, courts are increasingly aware that such name calling is unhelpful: at best the phrases state results rather than reasons, and at worst they obscure analysis.") (citing *Bell Oil & Gas Co. v. Allied Chem. Corp.*, 431 S.W.2d 336, 339 n. 3 (Tex.1968)). · The outcome ought to depend, we repeat, on the purpose for which the question is asked. A corporation is obviously fictional respecting the law of gravity (lest the great state of Delaware should sink into the Atlantic); but our task is to deal with this individual corporation under the law of Texas. We therefore turn to Texas precedents.

### B.

The landmark case on piercing the corporate veil in Texas is *Castleberry v. Branscum*, 721 S.W.2d 270 (Tex.1987). There Justice Spears explained the purpose of imposing individual liability, and he listed six species of piercing (the first two of which are implicated in our case):

> The corporate form normally insulates shareholders, officers, and directors from liability for corporate obligations; but when these individuals abuse the corporate privilege, courts will disregard the corporate fiction and hold them individually liable.

> We disregard the corporate fiction, even though corporate formalities have been observed and corporate and individual property have been kept separately, when the corporate form has been used as part of a basically unfair device to achieve an inequitable result. Specifically, we disregard the corporate fiction:

> (1) when the fiction is used as a means of perpetrating fraud;

> (2) where a corporation is organized and operated as a mere tool or business conduit of another corporation;

> (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation;

> (4) where the corporate fiction is employed to achieve or perpetrate monopoly;

> (5) where the corporate fiction is used to circumvent a statute; and

(6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.

*Id.* at 271–72 (citations and footnotes omitted). There is of course no requirement that a business operator keep the corporate veil intact. An entrepreneur is entirely free to function as a sole proprietor—or for that matter as the alter ego of a particular corporation. *See Long Falls Realty Co. v. Anchor Elec. Co.,* 405 S.W.2d 170, 173 (Tex.Civ.App.—Dallas 1966, no writ) ("Alter ego corporations are not of themselves illegal."). But such an operator acts at the peril of incurring personal liability from the commission of a legal wrong; liability which would otherwise fall only on the corporation may properly be put at the individual's doorstep in the absence of the corporate veil.

Failure to maintain this shield in no way creates a cognizable cause of action: it simply enables the victim to pursue a remedy against an additional defendant who would otherwise be immune. According to well-settled Texas law, "[t]he fact that a corporation may be the alter ego of an individual or that an individual may be the alter ego of a corporation does not create a cause of action against either the individual or the corporation...." *Gulf Reduction Corp. v. Boyles Galvanizing & Plating Co.,* 456 S.W.2d 476, 480 (Tex.Civ.App.—Fort Worth 1970, no writ); *accord In re S.I. Acquisition, Inc.,* 817 F.2d 1142, 1152 n. 11 (5th Cir.1987); *Equinox Enterp. v. Associated Media, Inc.,* 730 S.W.2d 872, 877 (Tex.App.—Dallas 1987, no writ); *Gallagher v. Bintliff,* 740 S.W.2d 118, 119 (Tex.App.—Austin 1987, no writ). We acknowledge the existence of some odd language out of the Dallas court, intimating that a suit to pierce the corporate veil can actually stand on its own feet as a cause of action. *See Seaside Indus., Inc. v. Cooper,* 766 S.W.2d 566 (Tex.App.—Dallas 1989, n.w.h.); *Speed v. Eluma Int'l, Inc.,* 757 S.W.2d 794 (Tex.App.—Dallas, writ pending). To the extent these decisions suggest that a pierced veil somehow generates a cause of action, they are plainly aberrational, at odds not only with elementary corporations law but also with the Dallas court's

own opinion in *Equinox Enterpr. v. Associated Media, Inc. See* 730 S.W.2d at 877 ("We recognize that alter ego is not a cause of action, but merely a means of imposing individual liability when it would not otherwise exist."). Nor can *Equinox* be distinguished as preceding *Castleberry v. Branscum,* because it in fact came several months after the supreme court's decision. Moreover, logic demands predication of such a cause of action on an underlying wrong. It would not do, for example, to say that a principal faces damage suits simply on the basis of engaging an agent. Rather, the principal is open to certain liabilities *if* an independent wrong occurs. Likewise, the fact of a marriage leads to certain consequences in the area of shared responsibilities for, say, a community debt. But there must naturally be a debt in the first place.

Part of the confusion in our case stems from the first type of piercing listed in *Castleberry,* namely "when the fiction is used as a means of perpetrating a fraud." In this context, fraud does not represent the standard tort with its well-defined elements, *see Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983), but instead means only constructive fraud. *See Castleberry,* 721 S.W.2d at 273. Constructive fraud, as a concept, has fuzzier edges and is less susceptible of easy definition. Indeed, when the courts call something constructive, they typically do so precisely because the subject defies convenient qualification yet deserves to be treated as "the real thing." Constructive delivery of a deed is, of course, no delivery at all, but the law will regard the relevant act as worthy of acceptance as a substitute. The problem here is that whereas *Trenholm v. Ratcliff* neatly staked out the contours of true fraud, no such case has done the same for constructive fraud. Nor is such a case possible, because the whole need for a doctrine of constructive fraud rests on the lack of a well-defined common law tort to cover the conduct at hand. The best the supreme court has been able to do is to remark that "constructive fraud is the breach of some

legal or equitable duty." *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.1964).

The point remains that the first *Castleberry* species is not a cause of action, but only a vehicle for imposing liability. It makes little difference whether one labels this variety of piercing a "sham to perpetrate a fraud" or a "sham to perpetrate constructive fraud." The supreme court could, for example, have included "sham to perpetrate trespass on the case," or "where the fiction is used as a means of perpetrating intentional infliction of emotional distress." What matters tremendously is the analytical distinction between the sham and the legal wrong. If a claimant wishes to recover damages, he must show the existence of a sham (or equivalent basis for piercing the veil) *and* the commission of some actionable wrong which caused him damages.

### C.

We next look to Texas law respecting limitations, especially in the corporate context. The time for bringing a breach of contract suit is four years. TEX.CIV.PRAC. & REM.CODE § 16.004. The same four year limit applies as a residual limitations period for all suits, other than recovery of real property, not expressly mentioned by statute. *Id.* § 16.051. There is apparently no dispute that a four year limitations period governs this case.[1] The parties vigorously disagree over the starting point from which that time should begin to run, and over who has the burden to plead and prove operation of the statute.

Although Texas law on limitations has become something of a conceptual muddle, certain principles are clear. The clock begins to run when the cause of action accrues, and courts make that determination on the basis of policy considerations. *See Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988). The presumptive point of accrual is the date of injury, but the courts have fashioned a discovery rule to accommodate those policy considerations. That rule is "the legal principle which, when applicable, provides that limitations run from the date the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury." *Id., citing Gaddis v. Smith*, 417 S.W.2d 577, 578 (Tex.1967). There exists no simple approach to analyzing whether the discovery rule applies in a given situation, but caselaw furnishes some guidance.

The supreme court has based a decision to apply the rule on the "shocking results" which would otherwise occur. *Gaddis v. Smith*, 417 S.W.2d at 581 (foreign object medical malpractice case). Likewise, it applied the principle to performance of a negligent vasectomy, because the alternative outcome was a "result so absurd and so unjust" that it "ought not to be possible." *Hays v. Hall*, 488 S.W.2d 412, 414 (Tex. 1973). Legal malpractice claims are subject to the rule because of the "special relationship between an attorney and client." *Willis v. Maverick*, 760 S.W.2d at 645. Finally, caselaw also applies the rule to instances where it is difficult for the injured party to learn of the negligent act or omission. *See Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex.1976) (false credit report); *Quinn v. Press*, 135 Tex. 60, 140 S.W.2d 438 (1940) (fraud).

The procedural guidelines for litigating a discovery rule problem appear in *Woods v. Mercer*, 769 S.W.2d 515 (1988). There the court held that the discovery rule is a plea in confession and avoidance. *Id.* at 517. Thus the party invoking the rule must plead it, prove it, and secure favorable findings thereon. *Id.*

### III. THIS LITIGATION

With these principles in mind we move to our case. Matthews brought this action against Rosen and HP & S on February 20, 1984. In its original petition Matthews alleged rendition of a prior judgment against

---

1. We therefore need not consider the ramifications of suing on a judgment, which might implicate a different limitations period. *See, e.g., Belleville v. Hanby*, 152 Mich.App. 548, 394 N.W.2d 412 (1986); *Passalacqua Builders, Inc. v. Resnick Dev. South, Inc.*, 608 F.Supp. 1261, *rearg. denied*, 611 F.Supp. 281 (S.D.N.Y.1985).

HP & S as a result of the 1979 lawsuit for breach of contract. Matthews further claimed HP & S had transferred approximately $250,000 out of the corporation and into Rosen's hands, allegedly for the purpose of obstructing collection of the original judgment. In addition, Matthews pleaded various bases for piercing the corporate veil, including alter ego and "sham to perpetrate a fraud or a constructive fraud."

Rosen filed a general denial, along with a verified denial of liability in the capacity in which he was being sued. Rosen further pleaded limitations, res judicata, and election of remedies. Trial was to a jury, and much of the evidence related to Rosen's conduct in running the financial affairs of HP & S. At the conclusion of the evidence the court submitted the case on six special issues. The bulk of the charge bears repeating here:

You are instructed that the law recognizes a corporation as a legal entity separate and apart from its shareholders. You are further instructed that one of the purposes of a corporation is to shield shareholders from personal liability for the debts of the corporation, if the corporation is not used as a sham to perpetrate a fraud on creditors or is not used as the alter ego of the individual.

### QUESTION NO. 1

Do you find from a preponderance of the evidence that Houston Pipe & Supply Company was the alter ego of Harvey Rosen?

Domination of corporate affairs by a sole stockholder or unity of interest do not in themselves constitute alter ego.

Alter ego exists when there is such unity between the corporation and the individual that the separateness of the corporation has ceased to exist and holding only the corporation liable would result in injustice.

You are instructed that you must consider the total dealings of Houston Pipe & Supply Company and Harvey Rosen, including the degree to which corporate and individual property have been kept separate, the amount of financial interest, ownership and control, whether Houston Pipe & Supply Company has been used by Harvey Rosen for personal purposes and the degree to which corporate formalities have been followed.

Answer "We do" or "We do not"

Answer: <u>We do</u>

### QUESTION NO. 2

Do you find from a preponderance of the evidence that the operation of Houston Pipe & Supply Company by Harvey Rosen after the execution of the contract between Matthews Construction Company, Inc. and Houston Pipe & Supply Company was a sham to perpetrate a fraud on Matthews Construction Company, Inc.?

"Fraud" means conduct which has a tendency to deceive others or to injure public interests.

Answer "We do" or "We do not"

Answer: <u>We do</u>

If you have answered Question No. 1 or 2 "We do" and only in that event, then answer Question No. 3; otherwise, do not answer the following question.

### QUESTION NO. 3

On what date did Matthews Construction Company, Inc. first know or, in the exercise of reasonable diligence, should it have known that Houston Pipe & Supply Company was operated as the alter ego of Harvey Rosen, if you so believe?

Answer by month, date and year

Answer: <u>3/12/83</u>

If and only if you have answered "We do" to Questions 1 and/or 2, answer Question No. 4. If you have answered "We do not" to both Questions 1 and 2, do not answer the following question.

### QUESTION NO. 4

What sum of money, if any, do you find from a preponderance of the evidence would reasonably compensate Matthews Construction Company, Inc. for damages, if any, proximately caused by

the conduct described in Questions 1 and 2?

Answer in dollars and cents, if any.

Answer: $500,000

If you have answered Question No. 1 and/or 2 "We do" and only in that event, then answer Question No. 5; otherwise, do not answer Question No. 5.

### QUESTION NO. 5

Do you find from a preponderance of the evidence that Harvey Rosen acted with malice towards Matthews Construction Company, Inc. in operating Houston Pipe & Supply Company?

"Malice" as used in this question means the intentional doing of an act done with ill will or evil motive, without just cause or excuse, or an act done with wanton, reckless and conscious disregard for the rights of others.

Answer "We do" or "We do not"

Answer: We do

If you have answered Question No. 5 "We do" and only in that event, then answer Question No. 6; otherwise, do not answer Question No. 6.

### QUESTION NO. 6

What sum of money, if any, do you find from a preponderance of the evidence should be awarded to Matthews Construction Company, Inc. against Harvey Rosen as exemplary damages?

"Exemplary damages" means an amount that you may, in your discretion, award as an example to others and as a penalty or by way of punishment.

Answer: $60,000

The trial court rendered judgment on the verdict as to actual damages, but it refused to award any punitive damages. Each side appeals. Rosen's first point of error claims the statute of limitations bars recovery. He reasons that any potential liability toward Matthews accrued in 1979, whereas Matthews failed to file the instant action until February 1984. Matthews makes several responses, each of which deserves careful consideration.

### A.

■ First, Matthews disputes Rosen's characterization of this lawsuit as a breach of contract action. Matthews maintains that this suit rests on a separate and distinct cause of action, namely constructive fraud. If this reasoning is correct, the suit to pierce the corporate veil stands on its own feet for limitations purposes, totally independent of the underlying wrong:

In the second suit, as a creditor, Matthews had a right to expect that the dominant shareholder, Rosen, would preserve corporate assets to protect creditors. Rosen had a duty to preserve assets for the benefit of any creditors. This right and duty are created by the law of equity independent of the contract.

Reply Brief of Matthews at 11; *see also id.* at 10 ("when the pleadings, evidence, and verdict are properly examined in context, Matthews' cause of action is apparent—constructive fraud created by Rosen's breach of his duty not to strip his corporation of assets.").

Rosen argues that disregard of the corporate form simply is not a cause of action. We agree, for the reasons set forth in an earlier portion of this opinion. We are not unmindful of Matthews' insistence that since "constructive fraud" should qualify as a cause of action, a suit to pierce the corporate veil on that basis must also qualify as a cause of action. But, as already noted, there is a vast difference between the sham and the underlying wrong. This lawsuit was intended to establish the sham, but the time for suing on the underlying wrong had facially expired—and without such a foundation, any recovery floats in midair.

Thus whatever the meaning of constructive fraud (a necessarily difficult concept to define), Matthews needed to prove its commission within the applicable limitations period. However, the jury only found HP & S to be a sham to perpetrate a fraud, where fraud was defined as "conduct which has a tendency to deceive others or to injure public interests." This finding does not supply a recognizable juridical basis for liability.

Accordingly, the only available starting point from which limitations ought to be calculated is the breach of contract. We must therefore inquire whether Matthews avoided the running of limitations after the breach of contract.[2]

The leading decision on point is *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571 (Tex.1975). There the plaintiff brought alter ego defendants into the suit after the time for doing so had apparently run. The supreme court held that filing against the original defendant stopped the running of the statute as to the alter ego defendants, because the seemingly separate entities were in a sense identical. The court added a disclaimer, however, "We are not suggesting that under our practice a defendant may be added by the trial court after a judgment has become final on appeal." *Id.* at 575 n. 2. Rosen and Matthews dispute the pertinence of this pronouncement to our case. They do not cite us, however, to any authority interpreting this statement, nor does our research reveal such caselaw. Matthews merely asks us to dismiss its import as dicta, whereas Rosen reads it as an unequivocal limitation on the alter ego exception to the statute of limitations.

In our view the supreme court's point in footnote two was that limitations ought to be suspended so that a claimant receives his day in court, but does not get a second try after exhaustion of the original process. In this way the courts can honor two countervailing policies, one of redress and one of finality.[3] *Gentry* allows what would otherwise be a late joinder, and it does so precisely because the alter ego defendant is, in a sense, already in the litigation: where "[the alter ego defendant] was in fact engaged in business in the name of [the original defendant] ... we hold that they are to be regarded as identical for the purpose of determining whether the present suit is barred by limitation." *Id.* at 575; *see also American Petrofina Co. v. Crump Bus. Forms, Inc.*, 597 S.W.2d 467 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.) (plaintiff allowed to bring individual defendant into the suit despite apparent expiration of limitations, because plaintiff alleged individual was alter ego of original corporate defendant).

This view also fits into the framework constructed by the intermediate appellate courts. For example, the Austin court of appeals has rejected an untimely collection attempt against an alleged alter ego defendant. *Gallagher v. Bintliff*, 740 S.W.2d 118 (Tex.App.—Austin 1987, writ denied); *accord Gulf Reduction Corp. v. Boyles Galvanizing & Plating Co.*, 456 S.W.2d 476 (Tex.Civ.App.—Fort Worth 1970, no writ). That court looked beyond the mere form of action, which was an attempt to collect a judgment, and recognized the substance of the suit, which was to disregard the corporate form so as to impose liability on alleged alter ego defendants. Matthews would distinguish *Gallagher* on two grounds: first, as being an alter ego case (instead of sham to perpetrate a fraud); second, as not involving a discovery rule problem. We cannot accept the first distinction as one with any legal content. The supreme court's six categories of piercing in *Castleberry* are not the type of airtight compartments which would warrant sepa-

---

**2.** It is difficult to square Matthews' distinction between alter ego (not a cause of action) and sham to perpetrate a fraud (alleged to be a cause of action) with the jury charge's failure to draw the same distinction. Matthews' own special issues treat alter ego and sham interchangeably. Question three is conditionally submitted on an affirmative finding of alter ego *or* sham. Indeed question three inquires *only* about alter ego, as if alter ego and sham are not so different after all. Furthermore, questions four and five are each predicated on an affirmative answer to questions one *and/or* two.

The structure of the charge leads inescapably to the conclusion that alter ego and sham are merely variations on the same theme. If the latter alone were a cause of action, it would make no sense to treat the two on an equal footing.

**3.** We express no opinion on the question whether *Gentry's* cutoff point—of a judgment being final on appeal—has been modified by later caselaw. *See Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1 (Tex.1986) (announcing that a judgment is final, for purposes of preclusion, upon rendition by the trial court despite the taking of an appeal).

rate statutes of limitations, in the way that a libel action deserves to be treated differently from trespass to try title. It would be illogical to bar, say, categories one, three, and five, while permitting an extended period for suing on categories two, four, and six. As to the discovery rule, Matthews presents a more difficult question, which we address below.

### B.

■ Matthews also argues Rosen waived any limitations defense by failing to secure favorable jury findings thereon. This line of argument is related to the discovery rule question in that each litigant claims the law placed a burden on the other party, a burden which was never discharged. Matthews takes the following view: elementary principles of civil procedure classify limitations as an affirmative defense; as such, the defense must be pleaded, proved, and found by the trier of fact. Because Matthews secured findings sufficient to support a recovery (for constructive fraud, i.e. sham to perpetrate a fraud), Rosen needed to establish the date of accrual of Matthews' cause of action.

Rosen takes a contrary position. He reasons that piercing the corporate veil is not a cause of action, so the jury's determination of when Matthews should have discovered the veil was penetrable (as opposed to when the cause of action accrued) is immaterial. Rather, the cause of action accrued in 1979, and Matthews had the burden of avoiding an apparent expiration of the time for filing suit. We agree. Piercing the corporate veil is not a cause of action; nor can it be, for, as we have stated, merely doing business with a pierced veil is not a tort. Accordingly, Rosen established a prima facie defense of limitations, which Matthews failed to defeat by interposition of the discovery rule. There is only one cause of action before us—breach of contract—and it has only one accrual date. This does *not* mean Matthews lacks other remedies,[4] it simply means time ran out on the single

cause of action presented so far. Rosen's first point of error is sustained.

### C.

Having disposed of the foregoing, we have no difficulty in addressing the punitive damages issue. Without an independent tort there is no basis for awarding punitive damages. We therefore affirm that part of the judgment denying punitive damages to Matthews, and we overrule all of Matthews' points of error. The jury's finding of malice is without legal effect because of the failure to establish an underlying tort.

It is unnecessary to reach Rosen's arguments regarding res judicata or election of remedies. We affirm that portion of the judgment denying recovery of punitive damages, and we modify the remainder to provide that Matthews take nothing.

---

4. The parties discussed fraudulent conveyance statutes in the trial court, but have not raised them in this court. We therefore express no

opinion on the availability of relief under those laws.