WIENER, Circuit Judge,
specially concurring:
I concur in the result reached by the panel majority, but I write separately because, with respect, I disagree with part of its methodology for getting there. Both the panel majority and I agree that applicability of section 1108.053 of the Texas Insurance Code is not limited to instances of actual fraud, i.e., intentional fraud, principally because the words used in the Texas Family[1] and Property[2] Codes to limit their coverages to intentional fraud are absent from the Insurance Code.[3] It is at this point, however, that the method of statutory construction I would employ and the substantive content I would give to the Insurance Code’s “in fraud of a creditor” provision diverge from the panel majority’s method and content.
The panel majority relies on three state statutes — the Texas Uniform Fraudulent Transfers Act (“TUFTA”),[4] the Texas Family Code, and the Texas Property Code — to determine how the non-intentional “fraud of a creditor” (which we agree is embraced by the Insurance Code) should be defined. But it is obvious to me that neither the Texas Property Code nor the Texas Family Code offers any guidance here because they address only actual, i.e., intentional, fraud and can therefore tell us nothing about the definitional elements of non-intentional fraud for purposes of the Insurance Code — the core issue in this case.
The only Texas statute among the three relied on by the panel majority that addresses anything other than actual (intentional) fraud is TUFTA. Therefore, of the statutes cited by the panel majority, only TUFTA is even potentially informative of the meaning of constructive or non-intentional “fraud of a creditor.” Yet TUFTA’s definition of “fraudulent as to a creditor” expressly recognizes only (1) intentional fraud (not applicable here) and (2) a transfer lacking “reasonably equivalent value” (plus other factors).[5] The panel majority nevertheless purports to use TUFTA’s in-dicia of intent to cobble together a version of non-intentional fraud,[6] while ignoring *1070 the definition of non-intentional fraud expressly provided in TUFTA — a transfer without reasonably equivalent value. Either TUFTA should be used to inform the analysis, in which case we should accept its definition of non-intentional fraud for purposes of the Insurance Code, or it should not be so used, in which case we would have no alternative but to resort to the common law. We cannot do both because, logically, TUFTA cannot simultaneously be both (1) the panel majority’s starting point and (2) the point at which the panel majority departs from TUFTA. Yet the panel majority’s opinion schizophrenically uses TUFTA both ways at once.
The panel majority’s opinion tries to finesse this inconsistency by stating: “Section 1108.53 of the Texas Insurance Code contains no such limitation, nor does § 1108.53 reference TUFTA’s definition of ‘constructive fraud.’ ”[7] But this defeats the purpose of turning to TUFTA for guidance in the first place. The panel majority uses TUFTA’s “fraudulent as to a creditor” to define “in fraud of a creditor” in the Insurance Code; but the exclusive definition of a non-intentional fraudulent transaction in TUFTA, is “[a] transfer made ... without receiving reasonably equivalent value.” So, unless the panel majority is willing simply to force-feed TUFTA’s receiving-reasonably-equivalent-value genre into the Insurance Code, there is no constructive-fraud nexus to be found between the two statutes.
In response to this objection, the panel majority pronounces the Insurance Code’s provision to be more “general” than TUF-TA’s. To me, it borders on circularity to say simply that the Insurance Code’s provision is more “general” than TUFTA’s, so TUFTA does not restrict the Insurance Code. For the panel majority to use TUFTA to inform its analysis of the Insurance Code, there must be a substantial degree of similarity — if not identity — between the two provisions. To baldly declare that such exists, and then inexplica *1071 bly dismiss any differences that actually exist, begs the question totally.
As I understand the panel majority’s method of statutory interpretation, it proceeds thusly: “(1) We don’t know what X means, so to assist our understanding we turn to Y, which we assume is close to X; (2) Y requires that either A or B be present; (3) we conclude, though, that X requires neither A nor B because X is not sufficiently close to Y.” Can it really be maintained that Y has been used to meaningfully define X in this way? With X being the Insurance Code’s “in fraud of a creditor,” Y being TUFTA, A being intentional fraud, and B being a transfer made without receipt of reasonably equivalent value, the panel majority is exposed as saying that “we don’t know what ‘in fraud of a creditor’ is, so we turn to TUFTA; TUFTA requires either actual intent to defraud or engaging in a transfer without receipt of equivalent value; ergo, absent actual intent, whatever else ‘in fraud of a creditor’ might mean, it does not require a transfer without equivalent value.” Go figure!
Again, I agree with the conclusion that Soza’s premium was a payment made “in fraud of a creditor.” But I can only justify providing content to the Insurance Code’s fraud provision by giving “fraud” its common law meaning, not by torturing other incompatible statutes. Sutherland says:
All legislation must be interpreted in the light of the common law and the scheme of jurisprudence existing at the time of its enactment. Where there is a limitation by statute which is capable of more than one construction the statute must be given that construction which is consistent with common law. And where an operative word is not defined in a statute the common law meaning controls.[8]
As there is reasonable doubt about what the Texas legislature meant to include when it provided an exception for “fraud of a creditor” in the Insurance Code — something the panel majority’s opinion already acknowledges — I see the Texas common law as the only defensible starting place for interpreting the statute at issue.
Further, I do not believe that the phrase “of a creditor” creates a new term of art, but simply cabins the universe of frauds to which this exception to the Insurance Code’s exemption applies. I conclude, therefore, that the interpretation of the “well-defined words and phrases in the common law” should comport with the presumption that “[c]ommon-law meanings are assumed to apply even in statutes dealing with new and different subject matter *1072 ... in the absence of evidence to indicate a contrary meaning.”[9]
For openers, Texas common law recognizes that there are two types of fraud— “actual” and “constructive.”[10] Actual fraud, which is not at issue in this case, requires “intentional breaches of duty that are designed to injure another or to obtain an undue and unconcientious [sic] advantage.”[11] Constructive fraud (being all non-intentional varieties of actionable fraud and therefore clearly at issue here) involves “breaches that the law condemns as ‘fraudulent’ merely because they tend to deceive others, violate confidences, or cause injury to public interest.”[12]
Texas courts have recognized in a general sense that “[cjonstructive fraud, as a concept, has fuzzier edges and is less susceptible of easy definition” than actual fraud.[13] Even though the contours of actual fraud have been neatly staked out,
no such case has done the same for constructive fraud. Nor is such a case possible, because the whole need for a doctrine of constructive fraud rests on the lack of a well-defined common law tort to cover the conduct at hand. The best the [Texas] [S]upreme [C]ourt has been able to do is remark that “constructive fraud is the breach of some legal or equitable duty.”[14]
*1073 Consistent with this definitional ambiguity, some Texas case law appears to have read this formulation of constructive fraud to require a confidential or fiduciary relationship.[15] A review of the cases reveals that, consistent with the flexible nature of equity, Texas has not construed constructive fraud so narrowly.[16] For example, although an intermediate Texas appellate court in Hubbard v. Shankle noted in its constructive fraud inquiry that no fiduciary relationship existed, it also explicitly referenced the absence of an additional “legal or equitable duty.”[17] The state appellate court in Jean v. Tyson-Jean noted that a reasonable trier of fact could have concluded that there was no “breach ... [of] fiduciary duty ... or conduct ... that was unfair to the community estate.”[18]
Among the Texas cases that I have examined,[19] Shwiff v. Priest comes closest to *1074 requiring a confidential or fiduciary relationship to support a finding of constructive fraud.[20] The Shwiff opinion, however, contains no reasoning beyond a mere citation to a case dealing with the duties owed by the spouses to community property as support for its contention that a fiduciary duty is required; and even this holding was not essential to the state court’s conclusion that there was no constructive fraud,[21] as the court also found that there had been no harm.[22]
Although “a decision by an intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by a federal court,” we are empowered to reach the conclusion that we believe the state’s highest court would reach if we are “convinced by other persuasive data that the highest court of the state would decide otherwise.”[23] And, the clearest pronouncement on constructive fraud by the Texas Supreme Court is not limited by the necessity of a fiduciary or confidential relationship.[24] As noted above, its other cases hint at the expansive nature of the concept. A survey of Texas case law reveals that a fiduciary or confidential relationship is not a prerequisite for a finding of constructive fraud; there need only be a violation of a legal or equitable duty, determined according to a flexible and fact-specific approach.
Klein v. Sporting Goods, Inc., is an excellent example of this flexible approach.[25] There, the owner of a gun store, the Gun Exchange, had pledged his inventory as security for a bank loan. He was also indebted to unsecured trade creditors. After the bank gave notice of its intention to foreclose on the inventory, the store owner (1) incorporated a second company, the *1075 Gun Store, (2) secured a line of credit from a different bank, and (3) had the new corporation purchase the inventory of his former business, the Gun Exchange. He had the new corporation pay more than market value for the inventory to avoid personal liability to the first bank, which held his personal guarantee in addition to a security interest in the inventory. The unsecured trade creditors were paid nothing after the owner transferred all assets of the Gun Exchange to his new corporate alter ego, the Gun Store. The trade creditors commenced suit against the now judgment-proof Gun Exchange.
Relying on a theory of constructive fraud, the trade creditors, with whom no fiduciary relationship is evident from the opinion or from the typical trade creditor-debtor relationship, sought to have the corporate fiction of the Gun Exchange disregarded and to make the owner personally liable for its debts. On appeal, the court had little difficulty affirming the jury’s finding of constructive fraud. It noted that although the corporate fiction will typically insulate shareholders, officers, and directors from liability, “when the corporate form has been used as part of a basically unfair device to achieve an inequitable result,” such insulation disappears.[26] The court further noted that the Texas Business and Commerce Code imposes a duty of good faith on all covered dealings and that the complex machinations of the Gun Store owner failed that test. As the duty of good faith was violated, and “[c]onstructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent,” the court affirmed the finding of constructive fraud.[27] Using corporate forms “as a method to avoid creditors ... was legally and factually sufficient to support the jury’s finding of constructive fraud.”[28]
As no special relationship between the debtors and their creditors in the instant case appears from the record, such legal duties as, for example, good faith and fair dealing, do not provide a basis for a finding of constructive fraud.[29] Taking all the surrounding circumstances in this case into consideration, however, I am convinced that, under Texas common law, the debtors’ annuity purchase violated an equitable duty. The factors recounted in the panel majority’s opinion are worth repeating here. The debtors purchased the annuity on the eve of bankruptcy, an equitable proceeding.[30] Although the nature of the federal proceeding does not alter our Erie inquiry, it does inform the circumstances in which a Texas court would determine *1076 whether an equitable duty exists. Assuming the annuity was acquired with the debtors’ non-exempt property, it was in an amount that would have covered all of the debtors’ listed debts, leaving the creditors with only $340 in non-exempt assets. The debtors also retained control of the property because it appears this annuity, like almost all, could be cashed out. And even though this feature is common to annuities, and thus cannot be proof of fraud in the ordinary case, here, the debtors conceded the temporary and contingent nature of the purchase.[31]
Klein provides support for the proposition that the debtors violated an equitable duty, yet because of the duty of good faith in that case, it is not on all fours with the present situation. At least one Texas court of appeals has, however, decided a case similar to Klein without reference to a legal or equitable duty of good faith. In Speed v. Eluma International, Inc., the owner of a corporation claimed that the corporation was in arrears on rent owed to him, giving him a lessor’s lien on which he immediately foreclosed, permitting him to transfer the entirety of the corporation’s assets to a third party for a prearranged sum.[32] This deal structure was used to circumvent a temporary restraining order that the creditors of the company had obtained to enjoin the very sale that the owner carried out through a different mechanism. The court concluded that this violated an equitable duty and refused to reverse the jury’s finding of constructive fraud.[33]
As in Klein and Speed, the annuity in the instant case has been used to achieve an inequitable result through machinations that have deprived the creditors of satisfaction for their claims and the bankruptcy court of the ability to adjudicate ownership of assets that might belong to the estate. Under the foregoing common law interpretation of the Insurance Code’s constructive fraud provision, the bankruptcy court was justified in looking through the sham of the annuity to the real source of the money, just as the courts in Klein and Speed used constructive fraud to prevent inequity. But this justification, I emphasize, is found in Texas common law, not in some *1077 tortured construction of dissimilar Texas statutes. It is for these reasons that, with respect, I specially concur in the panel majority’s judgment.

. Tex. Fam. Code Ann. § 4.106(a) (Vernon 2007).

. Tex Prop. Code Ann. § 42.004(a) (Vernon 2007).

. Tex. Ins. Code. Ann. § 1108.053 (Vernon 2007).

. Tex Bus. & Com. Code Ann. § 24.005(a) (Vernon 2007).

. See id. § 24.005(a).

. As the panel majority seems to acknowledge by saying “exactly what conduct less than intentional fraud amounts to fraud on creditors under section 1108.053 is unclear .... Ultimately Texas courts will have to determine how much less than actual intent to defraud suffices to deny exemptions,” this case was ripe for certification to the Texas Supreme Court. Tex. Const. art. V, § 3-c; Tex.R.App. P. 58. It is quizzical to me that it was not certified, given its clear fit into the certification jurisprudence. See Arizonans for *1070 Official English v. Arizona, 520 U.S. 43, 76, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) ("Certification procedure ... allows a federal court faced with a novel state-law question to put the question directly to the State’s highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response.”). Because I agree with the result reached by the panel majority, and believe the Texas Supreme Court would as well, I do not insist that certification is required here, even though that would be my preference.

. The panel majority also attempts to draw a distinction between "constructive fraud,” a well-defined common law term, and a new, nebulous concept that it labels "less-than-intentional” fraud, which is neither fish nor fowl, i.e., neither common law constructive fraud nor TUFTA’s statutory version of constructive fraud. It does this, in part, to claim that the common law definition of constructive fraud is inapposite because the Insurance Code's statutory regime has created a new creature of non-intentional fraud. As a result, Texas law, at least in this circuit, now has four flavors of fraud — (1) actual, (2) common law constructive, (3) TUFTA’s lack-of-reasonably-equivalent-value-plus-other-factors, and (4) the Insurance Code’s innominate fourth variety. As I explain below, I believe, as do commentators on statutory construction, see, e.g., 2b Sutherland Statutes and Statutory Construction § 50:3 (7th ed.2008), that when a statute does not define a word, and that word has a well-accepted common law meaning, the legislature is presumed to have had that common law meaning in mind. Even if this were not so, I would find it questionable for the panel majority's opinion to manufacture an entirely new species of Texas fraud and then make no effort to situate it among the other three varieties, except to say that it is none of the other types, and that Texas will just have to work it out. If we decide that every Texas statute that uses the term "fraud,” unqualified by the requirement that it be intentional, spawns a new species of fraud, Texas law is in for a multi-faceted treatment in this circuit.

. 2b Sutherland Statutes and Statutory Construction § 50:1 (7th ed.2008) (footnotes omitted); see id. § 50:3 ("Although a statute may define the way in which a particular word is used, the common-law background and origin of the word may be useful to a proper understanding of the statute in cases of reasonable doubt.”). If common law meanings of words can inform a statute's interpretation even when a definition of a term is provided by the legislature, they can, a fortiori, be used to define an undefined term. Texas appears to follow this approach. See Tex. Gov’t Code Ann. § 312.002(b) (Vernon 2007) ("If a word is ... used as a word of art, the word shall have the meaning given by experts in the particular trade, subject matter, or art.”); id. § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.”). This last point is important, of course, because Texas law governs how we interpret the Insurance Code. Milligan v. Trautman (In re Trautman), 496 F.3d 366, 368 (5th Cir.2007) ("This court [in interpreting a Texas bankruptcy exemption in the Insurance Code] must interpret the statute as a Texas court would.”). Formally, it appears Texas Government Code section 311.011 applies because section 1108.053 of the Texas Insurance Code was acted on by the 60th or subsequent Texas legislature. See Font v. Carr, 867 S.W.2d 873, 881 n. 4 (Tex. App.—Houston 1993, writ dism'd w.o.j.).

. 2B Sutherland Statutes and Statutory Construction supra note 8, § 50:3 (7th ed.2008).

. See In re Estate of Kuykendall, 206 S.W.3d 766, 770 (Tex.App.—Texarkana 2006, no pet.);, Cotten v. Weatherford Bancshares, Inc., 187 S.W.3d 687, 702 (Tex.App.—Fort Worth 2006, pet. denied); Flanary v. Mills, 150 S.W.3d 785, 795 (Tex.App.—Austin 2004, pet. denied); Chien v. Chen, 759 S.W.2d 484, 494-95 (Tex.App.—Austin 1988, no writ). It would be farcical to maintain that the absence of the phrase "constructive fraud” from the statute itself precludes a conclusion that the Texas legislature intended for it to be included. Things called constructive are almost always unmentioned or incomplete; otherwise they would be actual, rather than constructive.

. Chien, 759 S.W.2d at 495 (emphasis in original).

. Id. (emphasis in original). I have left unaddressed the panel majority’s problematic use of indicia of intent, the central inquiry of actual fraud, to determine whether constructive fraud is present. The panel majority says "DOaclors relevant to determining actual intent to defraud, a higher culpability panel standard, should be equally probative where something less than actual intent will suffice.” This need not be the case. Although proscriptions of intentional fraud tend to police bad motives, proscriptions of constructive fraud police a set of non-intentional activities that nevertheless violate public policy. Not all constructive frauds are actual frauds, and it may be that not all actual frauds are constructive frauds (as under TUFTA's conceptualization of non-intentional fraud).
But even if all actual frauds are constructive frauds because proof of an intent to deceive is always violative of public policy, it does not follow logically that all half-actual frauds are constructive frauds. Indeed, the question why half-proof of intent (under some lesser combination of the "badges of fraud” than would be necessary for an inference of intent) suffices to prove constructive fraud is left wholly unexamined in the panel majority's opinion.
I have also left unaddressed the panel majority's use of the United States Bankruptcy Code to inform its elaboration of Texas state law without any demonstration of the persuasiveness of this authority. The flaw of this approach should be obvious to the reader. (Texas is not an "opt-out” state, so the debtors in question had the option of electing federal or state exemptions. Perry v. Dearing (In re Perry), 345 F.3d 303, 308 n.5 (5th Cir.2003). As the debtors have relied on state exemptions under 11 U.S.C. § 522(b)(3) (Supp. V 2005), state law governs and we wear our Erie hats. Trautman, 496 F.3d at 369).

. Rosen v. Matthews Const. Co., Inc., 777 S.W.2d 434, 437 (Tex.App.—Houston 1989), rev’d on other grounds, 796 S.W.2d 692 (Tex.1990).

. Id. at 437-38 (quoting Archer v. Griffith, 390 S.W.2d 735, 740 (Tex.1965)).

. See, e.g., Hubbard v. Shankle, 138 S.W.3d 474, 483 (Tex.App.—Fort Worth 2004, pet. denied) ("Constructive fraud is the breach of a legal or equitable duty that the law declares fraudulent because it violates a fiduciary relationship.”); Jean v. Tyson-Jean, 118 S.W.3d 1, 9 (Tex.App.—Houston 2003, pet. denied) (same); In re Estate of Herring, 970 S.W.2d 583, 586 n. 3 (Tex.App.—Corpus Christi 1998, no pet.) (same); Shwiff v. Priest, 650 S.W.2d 894, 902 (Tex.App.—San Antonio 1983, writ refd n.r.e.) (same); Thames v. Johnson, 614 S.W.2d 612, 614 (Tex.Civ.App.—Texarkana 1981, no writ) (same); Carnes v. Meador, 533 S.W.2d 365, 370 (Tex.Civ.App.—Dallas 1975, writ refd n.r.e.) (same).

. See, e.g., Vickery v. Vickery, 999 S.W.2d 342, 377 (Tex.1999) (“Constructive fraud is most frequently found in a breach of a fiduciary or confidential relationship.” (emphasis added)); Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 204 (Tex.2002) (noting that a constructive fraud claim "is derivative, at least in part, of the breach of fiduciary duty claim.” (emphasis added)); Seaside Indus., Inc. v. Cooper, 766 S.W.2d 566, 568 (Tex.App.—Dallas 1989, no writ) ("We need not decide if the [defendants] violated a legal duty. Constructive fraud also arises when an equitable duty is violated .... By taking a 'flexible fact-specific approach focusing on equity,’ [a] court upheld the finding of a sham to perpetrate a fraud.” (emphasis in original)) (citation omitted) (quoting Castleberry v. Branscum, 721 S.W.2d 270, 273 (Tex.1986), superceded by statute on other grounds, Tex Bus. Corp. Act art. 2.21(A)(2) (Vernon 2007)); Hudspeth v. Stoker, 644 S.W.2d 92, 94 (Tex.App.—San Antonio 1982, writ refd) (“[C]on-structive fraud usually involves a breach of trust or confidential relationship....” (emphasis added)); see also 32 C.J.S. Fraud § 7 (2008) ("[A]lthough there is authority to the contrary, it has been held that constructive fraud does not require the existence of a fiduciary or confidential relationship.” (footnote omitted)).

. 138 S.W.3d at 483.

. 118 S.W.3d at 9 (emphasis added).

. I would be remiss if I did not note that only the trustee saw fit to discuss some of the cases examined here; the debtors’ brief contains no analysis of the case law on constructive fraud in Texas. Further, the precedents in this circuit interpreting the requirements for constructive fraud under Texas law, Monnig’s Dep’t Stores, Inc. v. Azad Oriental Rugs, Inc. (In re Monnig’s Dep’t Stores, Inc.), 929 F.2d 197, 201 (5th Cir.1991), Permian Petroleum Co. v. Petroleos Mexicanos, 934 F.2d 635, 644 (5th Cir.1991), and Brooks, Tarlton, Gilbert, Douglas & Kressler v. U.S. Fire Insurance Co., 832 F.2d 1358, 1369 (5th Cir.1987), were completely ignored by both parties. In In re Monnig’s, while discussing the requirements for a constructive trust, this court said that constructive fraud “usually involves a breach of trust or confidential relationship.” 929 F.2d at 201 (emphasis added). Permian quoted the Archer formulation. 934 F.2d at 644. In Brooks, we noted that "[t]he benchmark of constructive fraud, as defined by Archer, is the existence of a fiduciary relationship,” but this was not essential to our holding, which concerned interpretation of the word "fraud” in an insurance contract. 832 F.2d at 1369.
We have also apparently drawn a distinction between constructive fraud and breach of fiduciary duty. Cf. Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough, 354 F.3d 348, 358 n.45 (5th Cir.2003) ("[O]ur precedent interpreting Tex *1074 as law as it relates to constructive trusts has not been altogether consistent. In some cases, we have interpreted Texas law as requiring a showing of actual fraud or breach of fiduciary duty .... More recently, we held that it was sufficient under Texas law for a plaintiff to show merely constructive fraud ...Some of the confusion over the concept of constructive fraud appears to result from our confusion over its cousin, the constructive trust. The imposition of a constructive trust is not at issue in this case because the Texas Insurance Code provides its own remedy for "fraud of a creditor," namely, denial of the exemption. Tex. Ins. Code Ann. § 1108.053 (Vernons 2007).
We did say, in an unpublished opinion, that Texas "appellate courts frequently intimate that [constructive fraud] occurs only where there is a fiduciary relationship between the parties.” Joslin v. Pers. Invs., Inc., No. M03-40200, 2004 WL 436001, at *5 (5th Cir. Mar.8, 2004) (unpublished). In another unpublished opinion, we also upheld a district court’s dismissal of constructive fraud claims because no fiduciaiy or "special” relationship existed between the parties. Independence Hill, Ltd. v. Puller Mortgage Assocs., Inc., 33 F.3d 1378 (5th Cir. Aug.10, 1994) (table). Consistent with Fifth Circuit Rule 47.5.4, we are not bound by these determinations, which are equivocal in any event. Furthermore, both should be rejected on the facts of this case and as a correct interpretation of Texas law.

. 650 S.W.2d at 902-03. Connell v. Connell, 889 S.W.2d 534, 542 (Tex.App.—San Antonio 1994, writ denied), also appears to equate constructive fraud with breach of fiduciary duty, but whether this was essential to the holding of the case, rather than simple dicta, is difficult to discern from the opinion.

. Shwiff, 650 S.W.2d at 902.

. Id. at 903.

. First Nat’l Bank of Durant v. Trans Terra Corp. Int'l, 142 F.3d 802, 809 (5th Cir.1998) (internal quotation marks omitted).

. See Archer v. Griffith, 390 S.W.2d 735, 740 (Tex.1965). Cases like Vickery v. Vickery, 999 S.W.2d 342 (Tex.1999), also demonstrate how flexible the concept of constructive fraud can be in Texas when they use words like “most frequently” and "ordinarily.”

. 772 S.W.2d 173, 175 (Tex.App.—Houston 1989, writ denied).

. Id. at 175. The Texas legislature has abolished shareholder liability as the remedy for constructive fraud. See Willis v. Donnelly, 199 S.W.3d 262, 271-72 (Tex.2006). Although the Texas legislature has decided that constructive fraud should no longer result in the same remedy, the elaboration of what constitutes constructive fraud by Texas courts should not have been disturbed by this legislative action. This is also why constructive fraud cases from other areas of the law, like domestic relations, are useful elaborations of the concept. Constructive fraud as a concept, like many of the broad remedies of equity, can be found in diverse substantive fields of law.

. Klein, 772 S.W.2d at 175.

. Id. at 176.

. See El Paso Natural Gas Co. v. Minco Oil & Gas, Inc., 8 S.W.3d 309, 312-13 (Tex.1999).

. See TNB Fin., Inc. v. James F. Parker Interests (In re Grimland, Inc.), 243 F.3d 228, 234 (5th Cir.2001) ("[T]he bankruptcy court is a court of equity and it must undertake an analysis of equitable considerations.”); United States v. AWECO, Inc. (In re AWECO, Inc.), 725 F.2d 293, 300 (5th Cir.1984) ("Equitable considerations should be preeminent in the exercise of bankruptcy jurisdiction.”).

.In a related context, we recently said:
Exempting all money traceable to a [whole-life insurance policy, exempt under section 1108.51 of the Texas Insurance Code] would allow people to use such policies merely to avoid creditors. People could place their money in a whole-life policy .... Sometime later — presumably even after only a few days — they could withdraw some of the money, or even all of it, forever shielding the money from creditors. That can't be the law. Less insidiously, someone desiring to have a whole-life policy actually for insurance reasons nonetheless could put her extra money into the policy simply to shield it from creditors. That also can’t be the law.
Milligan v. Trautman (In re Trautman), 496 F.3d 366, 370 (5th Cir.2007). Similarly, it surely cannot be the law here that whether in an effort to “maximize the debtors' exemptions” or to prevent litigation of their share of a possibly disputed inheritance that the debtors are permitted to shield all but $340 from their creditors. "We certainly have no quarrel with [the] contention that the federal courts should bend every effort to prevent the bankruptcy statutes from being used as a cloak for fraud.” Piedmont Ice & Coal Co. v. Am. Serv. Co., 130 F.2d 78, 80 (4th Cir.1942).

. 757 S.W.2d 794, 797-98 (Tex.App.—Dallas 1988, writ denied), disapproved of on other grounds by Donwerth v. Preston II Chrysler-Dodge, Inc., 775 S.W.2d 634 (Tex.1989).

. Id. at 798; see id. at 797 (“[T]he [Texas] [S]upreme [C]ourt upheld a finding of constructive fraud when a contract debtor manipulated corporate assets so that a contract creditor's claim could be not be satisfied out of corporate assets.” (citing Castleberry v. Branscum, 721 S.W.2d 270 (Tex.1986), super-ceded by statute on other grounds, Tex. Bus. Corp. Act art. 2.21(A)(2) (Vernon 2007))).